# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, a Virginia insurance corporation, | ) ) ) | **CIVIL ACTION NO.:** 2:20-cv-1354 |
| Plaintiff, | ) ) | |
| vs. | ) ) | **JUDGE:** |
| WINDOW WORLD OF BATON ROUGE, LLC, a Louisiana limited liability company, | ) ) ) | **MAGISTRATE:** |
| Defendant. | ) ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

**COLONY INSURANCE COMPANY** (CIC) files the following Complaint for Declaratory Judgment against Defendant **WINDOW WORLD OF BATON ROUGE, LLC** (Window World), seeking a declaration that the Policy (defined herein) does not provide coverage to Window World for some or all of the damages alleged in a Lawsuit (defined herein) against Window World:

### I.   PARTIES

1.   CIC is an insurance corporation that is incorporated and has its principal place of business in Virginia. Thus, for purposes of diversity jurisdiction, CIC is considered a citizen of the State of Virginia.

2.   Window World of Baton Rouge, LLC is a Louisiana limited liability company, who can be served with process through its registered agent or officer, James W. Roland, at 8405 Airline Highway, Baton Rouge, Louisiana 70815. Window World's sole managing member is James W. Roland, who is of full age of majority and a citizen of the State of Louisiana. Thus, for

purposes of diversity jurisdiction, Window World is considered a citizen of the State of Louisiana.

## II. JURISDICTION, VENUE, AND SUBSTANTIVE LAW

3. This is an action for declaratory relief pursuant to the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, concerning Window World's rights, if any, under an insurance policy issued by CIC, where claims have been asserted against Window World for damages in excess of $75,000.00.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1332(a)(1) and (2), because the parties are citizens of different states and the amount-in-controversy in this matter exceeds $75,000.00, exclusive of interest and costs.

5. The relief requested in this Complaint is within the jurisdiction of this Court and the subject matter is within the jurisdiction of this Court.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because all or a substantial part of the events giving rise to the hereinafter-described insurance claim occurred in this judicial district, and the Property (defined herein) which is the subject of the insurance claim is located in this judicial district.

7. Pursuant to 28 U.S.C. § 1332, the substantive law of Louisiana applies to this dispute. *Erie R.R. Company v. Tompkins*, 304 U.S. 64 (1938).

## III. FACTUAL BACKGROUND

8. CIC issued, *inter alia*, Commercial General Liability Policy No. 103 GL 0010436-02, to named insured, Window World of Baton Rouge, LLC, with effective dates from July 1, 2017, to July 1, 2018 (the "Policy"). A copy of the Policy is filed herewith as **Exhibit "A"** and identified by Bates Nos. "COLONY-00001" through "COLONY-00082."

9. The Policy provides coverage subject to its terms, limitations, and conditions.

10. On June 27, 2019, a Petition in Redhibition and for Damages was filed by Robert Larsen, IV and Erin Larsen ("Plaintiffs") against Mashood Kahn ("Kahn"), currently pending the 24th Judicial District Court for the Parish of Jefferson, State of Louisiana, Case No. 796-701 (the "Lawsuit"). A copy of the Petition in Redhibition and for Damages is filed herewith as **Exhibit "B"**.

11. As alleged, on July 15, 2016, Kahn purchased a property located at 4728 Conlin Street, Metairie, Louisiana ("Property") and renovated it. (Ex. B at ¶ 3). On August 10, 2018, Plaintiffs purchased the Property from Kahn, after being assured by Kahn that the Property had been completely renovated. (*Id.* at ¶¶ 4-5).

12. Plaintiffs alleged, however, that in August 2018, during the first substantial rainfall after they moved in, a mirror fell off the wall because the sheetrock was wet from water intrusion. (*Id.* at ¶ 6). In addition, there was water puddling in the dining room, which appeared to be coming from the front porch. (*Id.*). At some point, Plaintiffs removed the interior drywall to determine the source of the water intrusion, and allegedly discovered repairs had been made to exterior wall framing, new windows had been improperly installed, and the front porch was not properly flashed allowing water intrusion. (*Id.* at ¶ 8). It is alleged Plaintiffs also discovered severe termite damage. (*Id.*).

13. On October 30, 2019, Kahn filed his Answer and Third-Party Demand, naming Window World as a Third-Party Defendant, a copy of which is filed herewith as **Exhibit "C"**. Kahn alleges that he contracted Window World to install the windows at the Property. (Ex. B at ¶ XX). He asserts that if the alleged defects of the Property are found to be related to the windows, then Window World is liable for said damages. (*Id.*).

      14.    As background, an Installation Contract dated March 20, 2013 was entered into between Window World (Contractor) and Givanildo Ferreira (Sub-Contractor), a copy of which is filed herewith as **Exhibit "D"**. In relevant parts, the Installation Contract provides as follows:

\* \* \*

1. The Sub-Contractor shall perform all labor for home improvement Contracts assigned to him by Contractor.

2. The Sub-Contractor is responsible to furnish all tools and labor and shall be in complete control of the method and time of the installation of vinyl replacement windows and other home improvements. The Sub-Contractor shall not be subject to the control of or supervision by the Contractor, except as to the results of the work.

\* \* \*

7. The Sub-Contractor shall be responsible for liability insurance and health and accident insurance for his employees.

8. **To the fullest extent allowed by law, the Sub-Contractor holds Contractor harmless and will be liable to the Contractor for defense and indemnity against any suit, action, claim, demand, lien, loss, damage, fine and including reasonable attorney fees, for or on account of any claim of illness, injury or death, caused by Sub- Contractor's employees, contractors, workers, statutory employees, borrowed employees, agents, assigns, representatives and subcontractors and in any case of loss or damage, violation of any statute, ordinance, building code regulation, or damage to any property which may arise from the work or operations under the Contract. This obligation applies whether Sub-Contractor is wholly or partially at fault in causing the damages and applies to indemnify, defend and hold harmless Contractor from and against any liability for Contractor's own fault. The Sub-Contractor agrees to pay any pursuit charges, including expert fees and attorney fees in pursuing this defense and indemnity obligation. The Sub-Contractor agrees that it has obtained insurance to insure its obligation to indemnify, defend and hold harmless Contractor.** [Emphasis added]

9. It is understood and agreed that-the Contractor and Sub-Contractor are not partners and that the Sub-Contractor is not an employee, agent, or representative of the Contractor. . . .

\* \* \*

10. **Sub-Contractor agrees to procure, and at all times maintain in force and effect, policies of insurance providing coverage for itself and its employees and naming Contractor as an Additional Insured to fulfill any defense and indemnification obligations.** [Emphasis added] Prior to commencement of any services, Sub-Contractor shall deliver to Contractor certificates of insurance evidencing that all such insurance policies and coverages are in full force and effect. Neither Contractor's acceptance of an incomplete or improper certificate, nor commencement of services or payment for any services hereunder, shall constitute a waiver of any rights of Contractor. For each policy under which Sub-Contractor is an insured, whether or not required by this agreement, Sub-Contractor agrees to waive and agrees to have it [sic] insurers specifically waive any rights of subrogation they may have against the Contractor. It is further agreed that each such policy shall be primary to any other coverage in favor of Contractor and that each such policy shall name Contractor as Additional Insured

with respect to the services provided by Sub-Contractor to Contractor and in connection with any liability directly or indirectly arising out of or in connection with the services performed by Sub-Contractor. Sub-Contractor shall be solely responsible for deductibles required under such policies. . . . Coverage and limits required are as listed below. Sub-Contractor further agrees that the cost of the required insurance is covered in the contract price.

Sub-Contractor Insurance Requirements

- General Liability:  General Aggregate              -   $2,000,000.00
                     Each Occurrence                -   $1,000,000.00
                     Products-Completed Operations  -   $2,000,000.00

\* \* \*

15. On July 26, 2016, Kahn signed a Window World Window and Patio Door Contract, purchasing eight (8) windows in the amount of $2,400.00, a copy of which is filed herewith as **Exhibit "E"**.

16. The windows were installed by Givanildo Ferreira at the Property and the job was completed on September 6, 2016.

17. As a result of the foregoing, on December 30, 2019, Window World filed an Answer to Kahn's Third-Party Demand. Subsequently, on March 9, 2020, Window World amended its Answer to include a Third-Party Demand against Givanildo Ferreira, Cicero Sanchez, and Underwriters at Lloyd's of London, a copy of which is filed herewith as **Exhibit "F"**.

18. CIC is currently providing a defense to Window World in the Lawsuit subject to a full and complete reservation of all rights.

### IV.   NEED FOR DECLARATORY RELIEF

19. This Complaint is not made for purposes of seeking a legal opinion but, rather, the parties have an actual, present, adverse, and antagonistic dispute relating to the Policy described above. As such, there is a *bona fide*, practical need for a declaration concerning the parties' legal rights, responsibilities, and obligations under the Policy issued from CIC to Window World.

20. CIC, therefore, seeks a declaration concerning its obligations under the Policy, specifically whether the Policy provides any coverage to Window World for the claims and damages asserted in the Lawsuit.

21. For reasons set forth herein, CIC seeks a declaration that there is no coverage under the Policy for the claims and damages asserted in the Lawsuit, and that CIC has no duty to defend nor indemnify Window World for any sums sought in the Lawsuit.

## V. **COUNT I – NO DAMAGE DURING POLICY PERIOD**

22. CIC incorporates by reference Paragraphs 1 through 21 of this Complaint as if copied herein *in extenso*.

23. The insuring agreement of the Policy provides coverage only if the "property damage" is caused by an "occurrence" that "occurs during the policy period", and "[p]rior to the policy period, no insured listed . . . knew that the . . . 'property damage' had occurred, in whole or in part." (Ex. A at Bates No. "COLONY-00010").

24. Further, the Policy provides that if the insured "knew, prior to the policy period, that the . . . 'property damage' occurred, then any continuation, change or resumption of such . . . 'property damage' during or after the policy period will be deemed to have been known prior to the policy period." (*Id.*).

25. Moreover, under Louisiana law, the "manifestation theory" applies to determine when property damage occurs. *See*, *e.g.*, *Oxner v. Montgomery*, 794 So.2d 86, 92 (La.App. 2d Cir.2001); *Korossy v. Sunrise Homes, Inc.*, 94-473 (La.App. 5th Cir.3/15/95), 653 So.2d 1215, *writs denied*, 95-1536, 95-1522 (La.9/29/95), 660 So.2d 878; *James Pest Control, Inc. v. Scottsdale Insurance Company*, 99-1316 (La.App. 5th Cir.6/27/00), 765 So.2d 485, *writ denied*, 2000-2285 (La.10/27/00), 772 So.2d 657.

26. Under the manifestation theory, property damage is deemed to occur "when the damage manifests itself, rather than when the negligent act which causes it occurs." *Oxner*, 794 So.2d at 92 (emphasis added); *see also New Orleans Assets v. Travelers Prop. Cas.*, No. 01-2171, 2002 WL 32121257, at *2 (E.D.La. Sept. 12, 2002) (explaining that "[t]he more prevalent manifestation theory . . . deems property damage to occur at the point when it becomes manifest, or when it is discovered").

27. The Policy contains an applicable coverage period from July 1, 2017 to July 1, 2018. (Ex. A at Bates No. "COLONY-00004").

28. There is no coverage under the Policy to the extent that the damages alleged in the Lawsuit did not occur or manifest until after Plaintiffs purchased the Property on August 10, 2018, which was outside of the CIC Policy period of July 1, 2017 to July 1, 2018.

29. Accordingly, CIC is entitled to a declaration that there is no coverage under the Policy for any "property damage" that did not "occur[] during the policy period."

### VI. COUNT II – "YOUR WORK" OR "YOUR PRODUCT" EXCLUSIONS

30. CIC incorporates by reference Paragraphs 1 through 21 of this Complaint as if copied herein *in extenso*.

31. The Policy excludes from coverage as follows:

* * *

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

* * *

   **2. Exclusions**
      This insurance does not apply to:

* * *

     **j. Damage to Property**
        "Property damage" to: . . .

        **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**
"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**
"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

    **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

    **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

**SECTION V – DEFINITIONS**

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.** You have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

* * *

16. "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
    **(1)** Products that are still in your physical possession; or

  **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:
   **(a)** When all of the work called for in your contract has been completed.
   **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.
   **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.
  Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

     \* \* \*

**17.** "Property damage" means:

 **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

 **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

     \* \* \*

**21.** "Your product":

 **a.** Means:

  **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
   **(a)** You;
   **(b)** Others trading under your name;
   **(c)** A person or organization whose business or assets you have acquired; and

  **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

 **b.** Includes:

  **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product", and
  **(2)** The providing of or failure to provide warnings or instructions.

 **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

 **a.** Means:

  **(1)** Work or operations performed by you or on your behalf; and
  **(2)** Materials, parts or equipment furnished in connection with such

        work or operations.

   **b.**  Includes:

       **(1)**  Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

       **(2)**  The providing of or failure to provide warnings or instructions.

* * *

(Ex. A at Bates Nos. "COLONY-00013" to "COLONY-00014" and "COLONY-00022" to "COLONY-00025").

    32.    Based on information currently known, there is no coverage under Exclusion 2.k. of the Policy for "property damage" to "your product" arising out of it or any part of it. (*Id.* at Bates No. "COLONY-00014").

    33.    Pursuant to Exclusions 2.m.(1) and 2.m.(2) of the Policy, there is no coverage to the extent the Property is impaired by a "defect, deficiency, inadequacy or dangerous condition" in "your product" or "your work", or a "failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (*Id.*).

    34.    Accordingly, CIC is entitled to a declaration that there is no coverage pursuant to the "your work" or "your product" exclusion of the Policy, including, but not limited to, Exclusions 2.k. and 2.m.

<strong>VII.    <u>PRAYER</u></strong>

WHEREFORE, CIC respectfully requests that Window World, be summoned to appear and answer herein, and that this Honorable Court adjudicate and enter a judgment declaring:

    A.    That there is no coverage under the Policy for any claims or damages set forth in the Lawsuit;

    B.    That CIC has no duty to defend Window World in the Lawsuit;

  C. That CIC has no duty to indemnify Window World as to any verdicts, judgments, or settlements in the Lawsuit; and

  D. For such other and further relief as the Court deems just and proper.

This 4th day of May, 2020.

            Respectfully Submitted,
            **MELCHIODE MARKS KING LLC**

            */s/ Olivia Y. Truong*
            _____
            **RICHARD E. KING (#25128)**
            **OLIVIA Y. TRUONG (#34990)**
            639 Loyola Avenue, Suite 2550
            New Orleans, Louisiana  70113
            Telephone: (504) 336-2880
            Facsimile:  (504) 336-2342
            Email: rking@mmkfirm.com
               otruong@mmkfirm.com
            *Attorneys for Plaintiff,*
            *Colony Insurance Company*